UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-TP-14004-CANNON

UNITED STATES OF AMERICA,

v.

RYAN PAUL VARVILLE,

   Defendant.
_____/

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF SUPERVISED RELEASE

The United States, by and through the undersigned Assistant United States Attorney, hereby opposes Ryan Paul VARVILLE's ("Defendant") motion for modification of supervised release (DE 2).

### Factual Background

The following facts are taken from the presentence investigation report ("PSI"), unless otherwise noted:

In May of 2009, German police conducted an internet operation of an Internet Relay Chat channel. During that investigation, a user "Tentagain2," later determined to be Defendant, invited the undercover officer to trade child sexual abuse material ("CSAM"). The German authorities downloaded 172 images and one video of CSAM from the suspect computer. The suspect IP address was determined to be Defendant's address in San Antonio, Texas. This information was relayed to American authorities in San Antonio.

On June 16, 2010, Homeland Security Investigations ("HSI") executed a search warrant on Defendant's residence. Defendant and his brother were present at the home at the time of the

search.  In Defendant's bedroom, agents found a generic desktop computer under Defendant's bed and a Dell desktop, disconnected, in his closet.  Both computers contained CSAM.  On the generic computer, agents found a file sharing program with user account "Tentagain2."

A forensic examination of these computers revealed that Defendant used them to distribute CSAM, receive CSAM, and chat with others about his sexual interest in prepubescent females.  In one chat session, on June 11, 2007, Defendant distributed nearly 200 images of CSAM.  In total, the examination of Defendant's devices yielded 15,942 CSAM images and 305 CSAM videos.  This CSAM included prepubescent boys and girls as well as toddlers.  Most of the depicted children appeared to be between 6 and 11 years old.  Some of the CSAM depicted bondage and other sadistic behavior, young children subjected to bestiality, and young children subjected to torture.  A small sample of these images are described in the PSI (PSI, ¶ 12).

Defendant's collection also contained an edited, "photo-shopped" image of Defendant with a small child touching his genitalia.

On November 3, 2010, a warrant was issued for Defendant's arrest.  Defendant fled to California and was at-large for four years, living under the alias "Brad Johnson."

In November 2014, upon law enforcement making contact with Defendant, Defendant denied having identification and provided a false name and date of birth.  When officers attempted to place Defendant under arrest, he fled on foot for a few blocks before being taken into custody.

On November 3, 2010, Defendant was indicted in the Western District of Texas with four counts of distributing/receiving CSAM (18 U.S.C. § 2252(a)(2)), one count of possessing CSAM (18 U.S.C. § 2252(a)(4)(B)), and two counts of obscene representations of the sexual abuse of children (18 U.S.C. § 1466A(a)(2)) (DE 1:10-13).  On September 21, 2015, Defendant pled guilty to one count of receiving CSAM, and the remaining counts were dismissed (DE 1:14).

Defendant's PSI reflects a guideline range of 360 months to Life (PSI, ¶ 62). However, because Defendant pled guilty to one count, the guideline range was the statutory maximum of 20 years (PSI, ¶ 62). On September 7, 2016, Defendant was sentenced to 120 months' prison, followed by 15 years' supervised release (DE 1:14-20).

The government conferred with United States Probation ("USP"), who provided that Defendant's supervised release ("SR") began in the Western District of Texas on April 29, 2025. Almost immediately, Defendant requested a transfer to the Southern District of Florida to reside with his parents. To facilitate this request, USP in the Southern District of Florida recommended several modifications to Defendant's supervised release terms; one such modification was that Defendant not possess or use any device capable of accessing the internet without prior approval of the Court. On May 1, 2025, Defendant voluntarily agreed to these modifications and waived a hearing on the matter. On May 9, 2025, the District Court for the Western District of Texas approved the modification, and on May 27, 2025, this Court accepted jurisdiction over the case.

On July 7, 2025, Defendant moved to modify his SR and eliminate the condition restricting him from internet access (DE 2). Defendant argues that he is having difficulty securing employment, paying bills, banking, enrolling in school, and registering as a sex offender.

## Argument

This Court has the authority to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision." 18 U.S.C. § 3583(e)(2). In reviewing such a motion, this Court is required to consider certain factors from 18 U.S.C. § 3553(a), including the nature and circumstances of

the offense and the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence to criminal conduct; the need for the sentence imposed to protect the public from further crimes of the defendant; and other factors.  Id.  The decision whether to modify a term of supervised release is a discretionary one, and Rule 32.1(b) of the Federal Rules of Criminal Procedure does not require a hearing, because the relief requested is "favorable to the person and does not extend the term of probation or of supervised release[.]"  F. R. Crim. P. 32.1(c)(2).

For over two decades, the Eleventh Circuit Court of Appeals has recognized the importance of restricting internet access for online sexual offenders.  In United States v. Zinn, 321 F.3d 1084 (11th Cir. 2003), a defendant, convicted of possessing CSAM, challenged his SR internet restriction.  The court found the internet restriction a "necessary and reasonable condition of supervised release," noting that it was not unlimited, in that the defendant could access the internet if given prior permission.  Id. at 1093.  The court also recognized that the internet "has become an important resource for information, communication, commerce, and other legitimate uses, all of which may be potentially limited to [the defendant] as a result of our decision."  Id.  Nevertheless, the court upheld the restriction, as the "particular facts of this case highlight the concomitant dangers of the Internet and the need to protect both the public and sex offenders themselves from its potential abuses."  Id.  See also United States v. Moran, 573 F.3d 1132, 1140 (11th Cir. 2009) ("Although the internet provides valuable resources for information and communication, it also serves as a dangerous forum in which an offender can freely access child pornography and communicate with potential victims.").  The court has held similarly as recently as 2023.  See United States v. Finnell, 2023 WL 6577444, at *2 (11th Cir. Oct. 10, 2023), cert. denied, 144 S.

4

Ct. 2529, 219 L. Ed. 2d 1205 (2024) (upholding SR restrictions on computer use for CSAM offender).

The United States Sentencing Commission has also recommended similar restrictions. For offenders being supervised for sexual offenses, the Commission recommends "[a] condition limiting the use of a computer or an interactive computer service in cases in which the defendant used such items." U.S.S.G. § 5D1.3(d)(7)(B).

Defendant's reasons for ignoring the importance of these internet restrictions are matters of convenience. While certainly more annoying, Defendant can still accomplish all the tasks he wants to do over the internet, without using the internet.

When determining whether to modify Defendant's SR conditions, § 3583(e)(2) requires the Court to consider some of the factors enumerated in § 3553(a). The relevant factors, in the government's view, from this section are addressed below:

a) <u>The nature and circumstances of the offense.</u>

Regardless of the crime, courts rarely, if ever, allow offenders on supervised release to have unfettered access to the channels in which they committed their offenses. Whether the subject matter be fraud, drug trafficking, or sex offenses, courts routinely take steps to prevent offenders from falling back into past behaviors.

As the Eleventh Circuit has observed, Congress prescribed long terms of supervised release for sex offenses because it "explicitly recognized the high rate of recidivism in convicted sex offenders." <u>United States v. Pugh</u>, 515 F.3d 1179, 1199 (11th Cir. 2008) (quotation omitted). Because of this risk, USP should be given tools to ensure that CSAM offenders do not revert to criminality. The best tool is to restrict these offenders' access to the very platform they used to commit their previous crimes.

Defendant possessed nearly 16,000 images of CSAM, and over 300 CSAM videos. Defendant was a very active participant in a market that trades on the sexual abuse and torture of infants, toddlers, and prepubescent children. Some of the images that Defendant possessed included a prepubescent female forced to engage in bestiality, the torture and sexual battery of a small girl, and other horrific acts.

The evil portrayed in these images is hard to fathom, as is the suffering these children endured, and continue to endure.

Defendant used the internet to collect and trade these images. The inconvenience visited upon Defendant pales in comparison to the damage he caused, and could cause, using the internet.

b) <u>The history and characteristics of the defendant.</u>

Besides Defendant's reprehensible conduct that led to his conviction, Defendant showed a willingness to go to great lengths to avoid detection by the government. After HSI searched his residence, Defendant moved to California and assumed a false name. Upon being confronted by law enforcement, after 4 years in hiding, Defendant gave a fake name and then fled on foot. Even in preparation for sentencing, Defendant claimed that he did not move to California to flee, and that he changed his name to "Brad Johnson" because it "sounded better for the type of business he was in" (PSI, ¶ 24).

This Court should not simply trust Defendant to have unfettered access to the internet and the same markets he used to commit his prior offense.

c) <u>To afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.</u>

Congress requires courts, when considering modifying SR, to consider deterrence and protecting the public. Defendant has been on supervised release for less than 3 months. Defendant was very involved in a market that does immeasurable damage to children across the world; the

6

most important thing this Court can do to prevent such harm in the future is to restrict Defendant's access to this market.

d) <u>Any pertinent policy statement issued by the Sentencing Commission.</u>

As noted above, for sex offenders, the Sentencing Commission recommends "[a] condition limiting the use of a computer or an interactive computer service in cases in which the defendant used such items." U.S.S.G. § 5D1.3(d)(7)(B).

## **Conclusion**

The United States respectfully requests that this Court deny Defendant's motion to modify his supervised release.

                Respectfully submitted,

                HAYDEN P. O'BYRNE
                UNITED STATES ATTORNEY

By:    <u>s/ Justin L. Hoover</u>
        Justin L. Hoover
        Assistant United States Attorney
        Court ID No. A5502493
        United States Attorney's Office
        101 South U.S. Hwy. 1, Ste. 3100
        Fort Pierce, Florida 34950
        Telephone: 772-466-0899
        Email: Justin.Hoover@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Court's CM/ECF system on July 21, 2025, and a copy will be mailed to Defendant at 695 24th Street SW, Vero Beach, Florida 32962.

/s/ Justin L. Hoover
Justin L. Hoover
Assistant U.S. Attorney